George Edward McGEE, Plaintiff,

v.

WARDEN, U. S. PENITENTIARY and U. S. Board of Parole, Defendants.

Civ. No. 75-482.

United States District Court, M. D. Pennsylvania.

June 16, 1975.

Marvin J. Rudnitsky, Selinsgrove, Pa., for plaintiff.

Michael McDowell, Lewisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

MeGee is currently an inmate at the Federal Penitentiary in Lewisburg, Pennsylvania. On July 30, 1973, he was paroled from that institution to supervision in the Alexandria, Virginia area. On November 2, 1973, MeGee was convicted in the Juvenile and Domestic Relations Court of Prince William County, Virginia of contributing to a delinquency of a minor. On November 13, 1973, the Prince William County Court imposed a one-year suspended sentence. MeGee's parole supervisor was aware of this offense but no parole violator's warrant was issued at that time. On May 6, 1974, such a warrant was issued charging MeGee with leaving the Alexandria, Virginia area without permission on April 18, 1974 and with having been convicted of a criminal offense while under parole supervision. On July 5, 1974, MeGee was arrested in South Carolina for driving under the influence of alcohol. At that time, the outstanding parole violator's warrant was executed against him. On July 8, 1974, he was convicted of the driving-under-the-influence charge. According to the Government, MeGee was interviewed in South Carolina on July 10, 1974 by J. LeRoy Graham, United States Probation Officer. This allegation is not refuted by MeGee. Further evidence of this interview is evidenced by Government's Exhibit B, an election form more fully discussed below. It is dated July 10, 1974 and is signed by Graham and MeGee. The authenticity of those signatures is not in dispute. There is also no allegation by MeGee

that Graham was the individual who caused the May 6 parole violator's warrant to be issued against him. Although there is no direct statement to this effect in the documents filed before the Court, it appears that a Mr. J. P. Gallagher was MeGee's parole supervisor and that he had caused the warrant to be issued.

At the interview with Probation Officer Graham, MeGee was presented with a document entitled "REVOCATION HEARING ELECTION FORM". On Page 2 of that document the alleged parole violator is asked to indicate his preference among three choices. MeGee does not deny that his initials appear beneath the first option which reads: "I REQUEST THAT I BE AFFORDED A REVOCATION HEARING BY THE BOARD OF PAROLE UPON MY RETURN TO A FEDERAL INSTITUTION." Beneath that large bold-faced heading, MeGee's initials appear before the following two statements: "I admit that I violated one or more of the conditions of my release," and "I have been convicted of violating the law while under supervision." The two other choices which MeGee had but did not select were: "I REQUEST THAT MY PRELIMINARY INTERVIEW BE POSTPONED" and "I REQUEST A LOCAL REVOCATION HEARING." MeGee makes no contention that he was coerced into making the selection that he made. His only challenge, which will be discussed later, is to the validity of the election form.

Soon after his July 10 interview with Probation Officer Graham, MeGee was transported to the Federal Penitentiary in Lewisburg, Pennsylvania. At the hearing, it was established that the charge of leaving the district without permission was erroneous. However, based on the two charges for which MeGee had been convicted, contributing to the delinquency of a minor and driving under the influence, the parole board revoked his parole. MeGee received notice of the Board's action October 30, 1974. The reasons given for the revocation of parole were: "Your release at this time would depreciate the seriousness of your parole violation and promote disrespect for the paroling process. There does not appear to be a reasonable probability at this time that you will live at liberty without violating the law because you have been convicted of giving beer to a minor and for (sic) driving under the influence of liquor."

MeGee has filed this federal habeas corpus petition challenging the foregoing procedure by which his parole was revoked and by reason of which he is now incarcerated.

Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) holds that a parolee is entitled to two hearings. The first of these is a "preliminary hearing" at or soon after the time of his arrest and detention in order to determine whether there is probable cause to believe that he has committed a parole violation. The second of these hearings is a somewhat more comprehensive one prior to the making of a final decision on whether to revoke the parole.

■■■ MeGee first contends that he did not receive a preliminary hearing as required by *Morrissey*. The Court is of the view that the interview with Probation Officer Graham on July 10, 1974 was sufficient under *Morrissey* to constitute a preliminary hearing. The minimal inquiry at or reasonably near the place of the alleged parole violation required by *Morrissey* need only be prompt and be conducted by an independent officer who decides whether there are grounds for believing that parole has been violated. Such an independent officer need not be a judicial officer. It is sufficient if the evaluation is made by "someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation." Morrissey v. Brewer, *supra,* at p. 486, 92 S.Ct. at p. 2603. That is precisely what occurred in this case. The apparent informality of the "hearing" does not undermine its sufficiency. See *Morrissey,* at p. 487, 92 S.Ct. 2593.

**184**

Consequently, the Court finds no violation of *Morrissey's* first requirement of a preliminary interview.

■ MeGee somehow attempts to argue that the Revocation Hearing Election Form presented to MeGee at the interview fails to comply with the due process requirements of *Morrissey* and entitles him to some form of relief. As the basis for this allegation, he relies on a statement which appears on page 1 of that form and reads "the prisoner is not entitled to a local revocation hearing, however, if he admits he has violated any of the conditions of his release or if he has been convicted of violating a law while under supervision." The Court finds no language in *Morrissey* which is contrary to this statement. Also, no progeny of *Morrissey* hold that a local revocation hearing must be afforded an alleged parole violator even though he has admitted violating the conditions of his parole and being convicted of an offense while on parole. To the extent that MeGee relies on the "preliminary hearing" aspect of *Morrissey*, found at page 485, 92 S.Ct. 2593 of the opinion, the Court has already found that such a hearing was afforded to him. Although MeGee's revocation hearing was not held at or near the place of his arrest but rather in Lewisburg, he nevertheless was interviewed in South Carolina by Probation Officer Graham within five days of his arrest. Thus, the quoted language on the election form in no way affected MeGee's right to a preliminary hearing. Once Probation Officer Graham made his determination of probable cause, grounds for MeGee's continued detention and return to Lewisburg were established. *Morrissey*, at p. 487, 92 S.Ct. 2593.

■■ MeGee next contends that his Parole Revocation Hearing was defective under *Morrissey* for three reasons. One, the evidence against him was not disclosed to him or his counsel. Two, he was denied the right to confront and cross-examine adverse witnesses. Three, he was given a meaningless statement of reasons for the parole revocation.

The case against MeGee was relatively simple. The extent of the evidence against him was the two crimes which he admitted committing while on parole. There were no adverse witnesses. Consequently, all the evidence against him was disclosed and there were no witnesses for him to confront. MeGee's third ground for his claim that the Parole Revocation Hearing was defective is also without merit. The reasons given him for revocation are sufficient to allow this Court to ascertain the factors considered by the Board in reaching its decision and state adequate grounds for revocation, i. e., conviction of a crime while on parole. MeGee's reliance on Craft v. Attorney General, 379 F.Supp. 538 (M.D. Pa.1974) is misplaced. A very important factor in that case which is lacking here is the existence in *Craft* of the Parole Board's guidelines for parole release consideration, 39 C.F.R. § 2.20, which, this Court held in *Craft*, already take into account the seriousness of the offense for which an individual has been incarcerated. Nothing analogous to those parole release guidelines exists in this case. This is not a parole release case.

■■ MeGee does challenge the manner in which the parole violator's warrant was issued and executed. Its issuance was based on two factors, one of which was, in MeGee's opinion, minor and the other of which was in fact, erroneous. Consequently, MeGee claims, the warrant was invalid, and the inclusion of the subsequent drunken driving conviction renders his entire parole revocation void. MeGee appears to be arguing that if a parole violator's warrant is erroneously issued, but in good faith, and in the interim the parolee commits a crime and is subsequently arrested, the intervening crime may not be considered as a grounds for parole revocation. The Court feels that the statement of the argument refutes it. In evaluating a parolee's conduct, a parole board is entitled to take into account any possible parole violation whether it occurred prior to the issuance of the

warrant or after the issuance but before the execution.

 MeGee was held some four months at Lewisburg until afforded a parole revocation hearing. *Morrissey* requires that a revocation hearing must be given within a reasonable time after the parolee is taken into custody. The *Morrissey* court viewed a lapse of two months as not unreasonable. This Court is disturbed by the length of time which it took the Parole Board to reach MeGee's case. However, given the fact that Me-Gee had admitted parole violations, the Court does not feel that at this time that delay standing alone is enough to over-turn his parole revocation.

An appropriate order will be entered.